Gina Louise **CARROLL** and Albert B.
Carroll, Appellants,
(Plaintiffs Below),

v.

**STATESMAN INSURANCE COMPANY,**
Appellee, (Defendant Below).

No. 3–485 A 86.

Court of Appeals of Indiana,
Third District.

June 18, 1986.

Robert J. Palmer, May, Oberfill, Helling & Lorber, South Bend, Anthony J. Iemma, Glenn E. Killoren, Elkhart, for appellants.

Peter G. Tamulonis, Michael E. Brown, Kightlinger & Gray, Indianapolis, for appellee.

HOFFMAN, Judge.

Plaintiffs-appellants Gina and Albert Carroll (the Carrolls) appeal an adverse jury verdict denying their punitive damage claim against Statesman Insurance Company (Statesman). The Carrolls' compensatory damage claim was disposed of prior to trial through an award on summary judgment.

The evidence relevant to this appeal discloses that a restaurant owned and operated by the Carrolls was heavily damaged by fire in April 1977. At the time of the fire the restaurant was insured through Statesman, against damage to the building, the contents and for business interruption.

Payment of the insurance proceeds was delayed initially because of an arson investigation by Statesman, and later because the parties could not agree on the amount of the loss. The investigation into the source of the fire was discontinued by Statesman in September 1977. After the parties obtained independent appraisals, the matter was submitted to an umpire. The umpire agreed with the Carrolls' ap-

praisal and awarded $106,518.88 for damage to the building, $125,000.00 for damage to the contents and $57,756.28 for business interruption.

The umpire's award for contents and business interruption was paid by Statesman; however, Statesman tendered a check for less than one half of the award for the building. In July 1978, the Carrolls instituted suit to recover the balance of the umpire's award and for punitive damages alleging bad faith in Statesman's refusal to pay the claim. In September 1981, the trial court granted the Carrolls' motion for summary judgment as to compensatory damages. A judgment was entered for the Carrolls for the balance of the umpire's award, plus interest. Only the issue of punitive damages remained for trial, which resulted in a verdict for Statesman in December 1984.

On appeal, the Carrolls raise five issues for review:

(1) whether the trial court erred in excluding testimony by Dr. Martin Blinder regarding the effects of Statesman's conduct on the Carrolls and the general public;

(2) whether the trial court erred in instructing the jury that Statesman had no duty to pay insurance proceeds to an innocent co-insured;

(3) whether the trial court erred in instructing the jury that Statesman was entitled to a presumption that it acted in good faith and whether repeated instruction regarding the Carrolls' burden of proof was prejudicial;

(4) whether the trial court erred in refusing to reread a preliminary instruction which contained the contentions of the parties as a final instruction when requested by the Carrolls; and

(5) whether the trial court erred in refusing to instruct the jury that Statesman had a duty to pay the proceeds of the insurance policy within 60 days of the appraisal.

■ The proper standard governing the assessment of punitive damages was announced in *Travelers Indem. Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 362, and recently reaffirmed in *Orkin Exterminating Co., Inc. v. Traina* (1986), Ind., 486 N.E.2d 1019, 1023. Our Supreme Court in *Travelers* stated,

"[P]unitive damages should not be allowable upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness. Rather some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing."

442 N.E.2d at 362.

Further, an award of punitive damages must be established by clear and convincing evidence and is based upon a finding that the conduct complained of "was so obdurate that [it requires punishment] for the benefit of the general public." *Orkin, supra,* 486 N.E.2d at 1022.

The Carrolls' first ground for error is based upon the trial court's determination that a psychiatrist, Dr. Martin Blinder, could not testify regarding the effects of Statesman's conduct upon the Carrolls or the effects of that type of conduct upon the general public. In opposing the testimony, Statesman argued that it was irrelevant to punitive damages and that it was prejudicial.

The trial court ruled that the testimony was relevant to compensatory damages but was not competent evidence as to punitive damages. The trial court expressed some willingness to accept testimony regarding public harm if it could be tailored to the area where the fire occurred and where the Carrolls resided, Elkhart, Indiana. Dr. Blinder's practice was limited to California. Because he was unable to testify regarding the effects on the public solely in Elkhart, Indiana, Dr. Blinder's testimony was inadmissible according to the trial court.

■ The goal of punitive damages is to serve the public interests by deterring wrongful conduct in the future by the wrongdoer and others similarly situated.[1] *Travelers, supra*, 442 N.E.2d at 358; *Vernon Fire & Cas. Ins. Co. et al. v. Sharp* (1976), 264 Ind. 599, 608, 349 N.E.2d 173, 180. The adverse impact of such conduct on public interests is not limited to the community in which the persons bringing the complaint reside.

■ Dr. Blinder's testimony could have established two factors: that actual harm was caused to the Carrolls by Statesman's conduct; and the harm to the general public if such conduct were continued in the future. Because no Indiana cases determining the type of evidence which can be used to establish adverse effects on the general public could be found, a review of decisions from other jurisdictions is instructive.

In *Lynn v. Taylor* (1982), 7 Kan.App.2d 369, 642 P.2d 131, 136, the Kansas Court of Appeals determined that the extent of the injury is a proper subject of inquiry when assessing punitive damages. Similarly, the Kentucky Court of Appeals noted that the amount of recovery for punitive damages cannot be determined without consideration of the seriousness of the injury. *Hensley v. Paul Miller Ford, Inc.* (1974), Ky.App., 508 S.W.2d 759, 763. In two recent decisions, *Roberson v. Ammons* (1985), Ala., 477 So.2d 957, 961, and *Todd v. United Steelworkers of America* (1983), Ala., 441 So.2d 889, 893, the Alabama Supreme Court found that a jury should assess punitive damages based upon "the enormity of the wrong inflicted upon the plaintiff, together with the necessity of preventing a similar wrong from being committed in the future." *Todd, supra*, 441 So.2d at 893.

The views in other jurisdictions, coupled with the purpose for punitive damages as stated in Indiana cases, that is to deter future wrongful conduct, provide the requisite relevancy aspects to render Dr. Blinder's testimony admissible. Given that the testimony was relevant, Statesman complains that it was prejudicial.

■ As a general rule, admission of marginally relevant evidence which is potentially prejudicial lies within the sound discretion of the trial court. *Gates v. Rosenogle* (1983), Ind.App., 452 N.E.2d 467, 471. Dr. Blinder's testimony was direct evidence on an essential element of punitive damages. As such, the evidence was more than marginally relevant and its relevance outweighed any prejudice to Statesman.

Additionally, Statesman argues that any error was harmless because the Carrolls did not present sufficient evidence to meet the clear and convincing standard of proof set out in *Travelers, supra*. A review of the record discloses conflicting evidence which was subject to interpretation by the jury. Our ruling allowing admission of additional evidence belies a finding that as a matter of law the Carrolls did not present clear and convincing evidence.

■ Next, the Carrolls challenge the trial court's instruction to the jury that Statesman had no duty to pay insurance proceeds to an innocent co-insured. The trial court instructed the jury that:

"UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE, THE DEFENDANT, STATESMAN INSURANCE COMPANY, HAD NO LEGAL DUTY OR OBLIGATION TO PAY ANY PORTION OF A CLAIM TO ONE MARITAL OR BUSINESS PARTNER WHILE INVESTIGATING THE OTHER MARITAL OR BUSINESS PARTNER CONCERNING SUSPICIOUS CIRCUMSTANCES WITH RESPECT TO AN INSURANCE CLAIM MADE ON JOINTLY OWNED PROPERTY."

Pursuant to two previous opinions by this Court, the instruction was erroneous.[2]

---

**1.** The stated purpose refutes Statesman's argument that the goal is to punish for the exact act complained of depending upon whether that act had any adverse effect on the general public.

**2.** It is somewhat difficult to determine why the instruction was given. Statesman's vice-president, Vernon Day, testified that any investigation of the claim for arson was discontinued by September 1977, approximately five months af-

In *American Economy Ins. Co. v. Liggett* (1981), Ind.App., 426 N.E.2d 136, this Court adopted the trial court's decision that unless an insurance policy specifically excludes coverage once any party to the policy deliberately causes the loss, an innocent co-insured is entitled to recover. The party who was presumed to have caused the loss in *American Economy* perished in the fire; thus, obviating the need to fashion a remedy which would not benefit the wrongdoer.

That specific question was addressed in *Fuston v. National Mut. Ins. Co.* (1982), Ind.App., 440 N.E.2d 751. This Court cited approvingly a decision from another jurisdiction finding that it would be against public policy to deny any recovery to an innocent party based upon marriage to a guilty co-insured.

■ On appeal, this Court must assume that an instruction based upon an incorrect statement of the law influenced the result, unless a review of the evidence reveals that a proper instruction could not have changed the judgment. *Zimmerman v. Moore* (1982), Ind.App., 441 N.E.2d 690, 693. Whether the Carrolls have demonstrated harm requiring reversal need not be addressed because reversal and remand for a new trial is required under the disposition of the first issue. In the eventuality of a new trial, the erroneous instruction should not be given.

■ The third issue raised by the Carrolls questions the propriety of an instruction which allowed Statesman a presumption that it acted in good faith. Our Supreme Court recently stated in *Orkin* that a defendant is entitled to an instruction "that the purpose of [a punitive damage] award is not to reward the plaintiff but to penalize or punish the defendant, for the public good, and that the defendant is presumed to be innocent of that charge until proven guilty by clear and convincing evidence." *Orkin, supra,* 486 N.E.2d 1024. Although the instruction given did not ex-

actly comport with the language used in *Orkin,* the instruction was not erroneous.

■ Also under issue three, the Carrolls contend that the instruction unduly emphasized their burden of proof, in that the jury was advised in four separate instructions on the Carrolls' burden of proof. In *Perry v. Goss* (1970), 253 Ind. 603, 608, 255 N.E.2d 923, 926, our Supreme Court noted that some repetition of instructions will occur and that they are not erroneous unless the repetition is so frequent and emphatic as to impress the jury with a particular phase of the law. Two of the four instructions set out the clear and convincing evidence standard announced in *Travelers, supra.* Two of the instructions expanded upon the standard. The instructions could be considered repetitive and in all likelihood could be consolidated; however, they do not appear to reach the degree of undue emphasis set out in *Perry, supra.* No error occurred.

■ The Carrolls' fourth issue predicates error on the trial court's refusal to reread a preliminary instruction, which contained the contentions of the parties, as a final instruction after a request was made by the Carrolls. Ind. Rules of Procedure, Trial Rule 51(A) states:

"General Instructions at Commencement of Action. When the jury has been sworn the court shall instruct in writing as to the issues for trial, the burden of proof, the credibility of witnesses, and the manner of weighing the testimony to be received. Each party shall have reasonable opportunity to examine such instructions and state his specific objections thereto out of the presence of the jury and before any party has stated his case. The court may of its own motion and, if requested by either party, shall reread to the jury all or any part of the instructions so given along with the other instructions given to the jury at the close of the case. The parties shall be given reasonable opportunity to submit

ter the fire. The claim was not fully paid until four years after the fire, apparently without any

claim that either party committed arson.

requested instructions prior to the swearing of the jury, and object to instructions requested or proposed to be given."

The rule mandates the giving of a preliminary instruction as a final instruction when requested by a party. Additionally, a party is entitled to an instruction on his theory of the case if warranted by the pleadings, issues and evidence presented. *Indianapolis Horse Patrol, Inc., A Corp. et al. v. Ward* (1966), 247 Ind. 519, 525, 217 N.E.2d 626, 629. A careful review of the record demonstrates an evidentiary basis for the instruction.[3]

■ Statesman relies on *Terre Haute Regional Hosp., Inc. v. El-Issa* (1984), Ind. App., 470 N.E.2d 1371, 1376 for the proposition that a party must specifically object prior to the giving of an objectionable instruction. However, a party need not specifically object to the refusal of a tendered instruction. *Ernst v. Sparacino* (1978), 177 Ind.App. 610, 614, 380 N.E.2d 1271, 1274.

■ Statesman also argues that any error would be harmless because the Carrolls did not adequately demonstrate prejudice. Prejudice is presumed when a trial court fails to follow a mandate of the trial rules. *Otte v. Tessman* (1981), Ind., 426 N.E.2d 660, 661; *Armstrong v. Lake* (1983), Ind. App., 447 N.E.2d 1153, 1155. Consequently, the trial court committed error in refusing to reread the preliminary instruction as a final instruction.

■ Finally, the Carrolls urge that the trial court erred in refusing to instruct the jury that Statesman had a duty to pay the proceeds of the insurance policy within 60 days of the appraisal. In *Atlas Constr. Co. v. Ind. Ins. Co.* (1974), 160 Ind.App. 33, 35, 309 N.E.2d 810, 812, this Court construed a policy provision identical to that found in the policy issued to the Carrolls. The Court determined that once the umpire issued an appraisal award, it was not subject to change by the court absent fraud,

collusion or partiality. *Atlas, supra,* 160 Ind.App. at 38, 309 N.E.2d at 813. Further, the clause in the Carrolls' policy provided for payment of a claim within 60 days after an appraisal award.

The instruction tendered by the Carrolls stated:

"In this case, the value of the loss was established, under the terms of the insurance policy, by an appraisal award. Once an appraisal award has been made by an appraisal umpire, an insurance company must make payment on that award within sixty (60) days under the terms of the insurance policy. Unless a party to the appraisal can show that the award was the result of fraud, mistake, misfeasance, or other prejudicial defect, the amount of the award cannot be contested. It is not sufficient, to contest the appraisal award, to show that some other method of appraisal might have been used."

The instruction contained a proper statement of the law and contrary to Statesman's assertion was relevant to the issue of bad faith. The substance of the instruction was not contained in any other instruction given by the court. Accordingly, the trial court erred in refusing the instruction.

The judgment is reversed and remanded for a new trial pursuant to the dictates of this decision.

Reversed and remanded.

STATON, P.J., concurs.

GARRARD, J., concurs in result with opinion.

GARRARD, Judge, concurring in result.

I concur in the result reached by the majority because I agree that harmful error was committed when the court refused to instruct the jury concerning the duty to pay the appraisal award.

I do not agree that it was error to exclude Dr. Blinder's testimony regarding the

---

**3.** No opinion is expressed as to the situation where the evidence does not support the rereading of the preliminary instruction, or where the substance of the instruction is embraced in other instructions which are given.

effect of Statesman's conduct upon the Carrolls. Carrolls' compensatory damages were not in issue, and the individual psychological impact upon them was not an element of punitive damages. I agree that more general opinion testimony might be admissible, but find no abuse of discretion in the trial court's action here.