**BROKERS INC., d/b/a Austin Supermarket, Appellant (Defendant Below),**

v.

**Martha WHITE, Appellee (Plaintiff Below).**

**No. 36A01–8607–CV–181.**

Court of Appeals of Indiana, First District.

Oct. 1, 1987.

John W. Mead, Mead, Mead and Thompson, Salem, for appellant.

Kenneth A. Layton, Montgomery, Elsner & Pardieck, Seymour, Robert L. Barlow, II, Cooper, Cox, Jacobs, Barlow & Leininger, Madison, for appellee.

ROBERTSON, Judge.

Appellant-defendant Brokers, Inc., d.b.a. Austin Supermarket (Austin) appeals the trial court's granting of the motion to correct errors in favor of appellee-plaintiff Martha White (Martha).

We affirm.

Martha filed suit against Austin's after she fell in Austin Supermarket and sustained injuries. The evidence showed that Martha was shopping for groceries for her family on April 21, 1981. Martha had reached for a jar of pickles to put in her cart when she fell flat on her back. After Martha's fall, witnesses observed a puddle of liquid underneath or near Martha. Witnesses described the puddle as light-green or yellow-green and smelling like pickle juice.

Martha was taken to the hospital where she was x-rayed. After being transferred to another hospital, she was examined by Dr. Carl Jamora. She complained of pain in the neck and lower back, and numbness in the lower extremities as well as weakness in her right hand. She exhibited weakness and limited range of motion; Dr. Jamora also observed a bruise on her lower back. Dr. Jamora found no injury to Martha's spine which would prevent her from walking. Nevertheless, Martha left the hospital in a wheelchair, and has been unable to walk since the fall in Austin's Supermarket.[1]

Several weeks after the accident, Martha consulted a neurologist, who confirmed the absence of a spinal injury. The neurologist referred Martha to a psychiatrist, Dr. Mitchell. Dr. Mitchell concluded that Martha was suffering from a conversion reaction. A conversion reaction or conversion hysteria is a condition in which a person experiences an involuntary loss of function in an area of the body, without any demonstrable physical injury which would account for the loss. Dr. Mitchell testified that a person manifesting a conversion reaction converts feelings of anxiety into a physical disturbance such as paralysis of the arms or legs. Expert witnesses also testified that Martha was susceptible or predisposed to a conversion reaction, given her history of early marriage, lack of education, and abuse by her spouse. Martha had told one of her doctors that following an injury she sustained several years earlier, she believed that paralysis would result if she ever fell again. The expert witnesses concluded that the fall in Austin's Supermarket was a "triggering event" for the conversion reaction.

Martha's complaint alleged that she had slipped and fallen as a result of Austin's negligence, and had received permanent and disabling injuries as a result. Austin denied any negligence and disputed that Martha's paraplegia was caused by her fall. After a trial, the jury returned a verdict in favor of Austin, and the trial court entered judgment on the verdict. Martha's motion to correct errors contained only one point of error: the court's refusal to read to the jury Martha's tendered instruction 9:

> A negligent party takes the person he injures as he finds him. A negligent party is not relieved from liability merely because a pre-existing condition of the injured person makes her more susceptible to injury. A negligent party is liable for harm to the injured person even though the condition of the injured person is neither known nor should it be known to the negligent party.

Martha requested a new trial. The trial court granted Martha's motion to correct errors, and Austin appeals.

Austin presents two issues for review:

---

1. During her stay in the hospital, Martha had attempted to walk to the bathroom with assistance of a walker. However, she fell, sustaining a chip fracture to her wrist. She has never again attempted to walk after this fall.

I. Whether the trial court erred in failing to comply with Ind.Rules of Procedure, Trial Rule 59(J)(7)?

II. Whether the trial court erred in granting Martha's motion to correct errors?

### I.

Austin complains that the trial court should have set out special findings of fact when it granted a new trial pursuant to Trial Rule 59(J)(7). The order succinctly stated that the trial court granted Martha's motion to correct errors and continued the matter.

The relevant portions of T.R. 59(J)(7) state:

\* \* \* \* \* \*

In its order correcting error the court shall direct final judgment to be entered or shall correct the error without a new trial unless such relief is shown to be impracticable or unfair to any of the parties or is otherwise improper; and if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair. *If corrective relief is granted, the court shall specify the general reasons therefor. When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted.* Such finding shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evidence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; if the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence. (Emphasis added).

Austin does not contend that the trial court found that the verdict, findings or judgment do not accord with the evidence. The trial court granted relief based on Martha's motion to correct errors in which Martha requested a new trial only on grounds that her tendered instruction number 9 should have been read to the jury. Where the trial court is not granting a new trial after weighing the evidence and reaching the conclusion that the jury verdict is not in accord with the evidence, the trial court is not required to set out special findings of fact. *Lake Mortgage Company, Inc.* (1975), 262 Ind. 601, 321 N.E.2d 556; *Horne v. State* (1983), Ind., 445 N.E.2d 976. Accordingly, there was no error in failing to do so in the instant case.

Austin also hints that the trial court should have provided general reasons for granting corrective relief. However, it has failed to cite us to case authority on point. Although the rule mandates that general reasons for corrective relief be stated, we do not perceive that any reversible error is demonstrated in this case, where the trial court has granted a new trial because it failed to read an instruction to the jury.

### II.

Austin next contends that the trial court was correct in not reading Martha's instruction 9 to the jury because it is not a correct statement of the law, and the subject matter was adequately covered by other instructions. Austin admits that the instruction was applicable to the facts of the case.

Reversible error occurs when the trial court refuses to give a tendered instruction that is a correct statement of the law, is applicable to the facts of the case, and is not adequately covered by other instructions given. *Pilkington v. Hendricks County Rural Electric Membership Corp.* (1984), Ind.App., 460 N.E.2d 1000. We hold that reversible error occurred at trial in this case because Martha's tendered instruction 9 met the requirements of a proper instruction; consequently, the trial court did not err when it granted the motion to correct errors.

Austin's chief contention on appeal is that the instruction is not a correct statement of the law. It asserts that *Johnson v. Bender* (1977), 174 Ind.App. 638, 369 N.E.2d 936, is not proper authority for the instruction. The *Johnson* court stated:

"It is clear that a tortfeasor takes the person he injures as he finds him. The tortfeasor is not relieved from liability merely because a pre-existing physical condition of the injured party makes him more susceptible to injury." *Citing* 25 C.J.S. *Damages* § 21 at 658.

*Johnson v. Bender, supra* 369 N.E.2d at 940.

Austin declares that the language from *Johnson v. Bender* is dicta because the *Johnson* court relied on a section in C.J.S. *Damages* for its analysis of a proximate cause issue in the case. We find puzzling Austin's conclusion that the *Johnson* court's statement is dicta. To the contrary, a central issue of the case was whether deputies who had forced decedent, who was an alcoholic, to ingest paraldehyde need have foreseen that decedent would aspirate gastric contents, causing his death. The court noted that the medical evidence showed that alcoholics are a group which may often vomit and aspirate gastric contents. *Johnson*, 369 N.E.2d at 940. Thus the rule of law taken from C.J.S. was central to the court's resolution of the proximate cause issue, and was not dicta.

We also reject Austin's claim that the instruction is mandatory. Mandatory instructions are ones which attempt to set up a factual situation directing the jury to a certain result. *Perry v. Goss* (1970), 253 Ind. 603, 255 N.E.2d 923. In *Perry*, the supreme court distinguished mandatory instructions from those merely stating propositions of law not based upon a detailed factual situation. Mandatory instructions are disfavored because of the risk involved in making a statement of the evidentiary facts under which the law would mandate a certain result. *Perry, id.*, 255 N.E.2d at 965. Martha's instruction 9, which merely states a proposition of law without attempting to set out any facts established in the case, is not mandatory.

Austin also asserts that the instruction is not a proper statement of the law because Martha omitted the word "physical" from the language borrowed from *Johnson v. Bender, supra:* "the tortfeasor is not relieved from liability merely because a pre-existing physical condition of the injured party makes him more susceptible to injury." Austin states that Martha may not omit the word "physical" from the instruction because it would allow the jury to award damages for Martha's mental injury, for which she may not recover, citing *Boston v. Chesapeake and Ohio Railway Co.*, (1945), 223 Ind. 425, 61 N.E.2d 326. However, Austin's reliance on *Boston* is misplaced. In *Boston* and cases cited subsequently, the rule developed that damages for mental anguish are recoverable only when accompanied by and resulting from a physical injury. *Boston, id., Charlie Stuart Oldsmobile, Inc. v. Smith* (1976), 171 Ind.App. 315, 357 N.E.2d 247 (modified on other grounds, 175 Ind.App. 1, 369 N.E.2d 947); *Leatherman v. Gateway Transportation Co.* (7th Cir.1964), 331 F.2d 241. However, if the negligent conduct causes any physical injury, and if there is any evidence that a mental condition resulted therefrom, the issue whether the mental illness is a natural and direct result of such physical injury is a question of fact. *Leatherman, supra.* Austin does not argue that Martha did not sustain any physical injury resulting from her fall; rather, the record indisputably established that Martha sustained a bruise on her back.

Moreover, we have discovered two federal cases based on Indiana law which recite the general rule without limiting it to a pre-existing *physical* weakness. *Abernathy v. Superior Hardwoods* (7th Cir.1983), 704 F.2d 963, 973 (referring to "pre-existing weakness"); *Cole v. Bertsch* (7th Cir. 1985) 766 F.2d 327 (referring to "pre-existing injury"). The rule that "you take your victim as you find him" has been applied in one jurisdiction in a case in which the plaintiff suffered a conversion reaction following a physical injury. *Quinius v. Estrada* (1969) Tex.Civ.App., 448 S.W.2d 552. The *Quinius* court held that none of the cited

authorities precluded recovery for the psychoneurotic reaction or conversion reaction suffered by the plaintiff, following serious physical injury as a proximate result of the negligent acts of the defendant.[2] Other cases have acknowledged that evidence of a conversion reaction or neurosis accompanied by physical injury presents a question for the jury on the issue of proximate cause. *Boston, supra,* 61 N.E.2d at 328 (in which plaintiff lost the complete use of one of his limbs due to traumatic shock); *Anunti v. Payette* (1978), Minn., 268 N.W.2d 52 (plaintiff involved in car accident who sustained brain stem injury developed a bizarre gait which was the result of a conversion reaction).

We conclude from the applicable Indiana cases and those in other jurisdictions that Martha's instruction 9 is a correct statement of the law, notwithstanding the omission of the word "physical" from the general rule recited in *Johnson v. Bender.* Of course, on re-trial, Martha must prove that her paralysis, or the conversion reaction, was proximately caused by the defendant's negligence. The jury question of proximate cause remains even where the jury is instructed that the defendant is not relieved from liability merely because a preexisting condition of the plaintiff makes

him more susceptible to injury. *See Johnson v. Bender, supra.*

■ Finally, we are not persuaded that instruction 9 was adequately covered by other instructions. Austin reasons that because the elements of proximate cause and damages were covered in final instructions 11 and 6, respectively, then it was not error to refuse Martha's instruction 9 since it was either an instruction on proximate cause or damages. Although Martha's instruction 9 contains elements of proximate cause and damages, we believe that the general rule it recites, that a negligent party is not relieved from liability merely because a pre-existing condition of the plaintiff makes her more susceptible to injury, is clearly not covered in the more general instructions alluded to above.

Judgment affirmed.

NEAL, J., and GARRARD, P.J., concur.

---

2. The contrary holding of the Texas Supreme Court in *Kaufman v. Miller* (1967) Tex., 414 S.W.2d 164 has been limited to its facts. *Quinius, supra; Padget v. Gray* (1987) Tex.Civ.App., 727 S.W.2d 706. The *Kaufman* court found defendant not liable as a matter of law because defendants could not have foreseen that plaintiff's disabling conversion reaction would result from defendant's negligent conduct. Plaintiff's conversion neurosis occurred after the rear wheel of his truck collided with defendant's car, and the plaintiff became nervous and "shook up" after pulling his truck off the road to investigate the impact he had felt, and learned of the accident and that no one was injured. The court concluded that the neurosis did not result from the impact, but from learning of the accident later. The plaintiffs in *Padget* and *Quinius* had sustained physical injuries in addition to their mental disabilities.